STATE, EDWARD T. DOBBINS ET AL., PROSECUTORS, v. THE BOARD OF COMMISSIONERS OF THE LONG BRANCH POLICE, SANITARY AND IMPROVEMENT COMMISSION, STYLED "THE LONG BRANCH COMMISSIONERS."

The act of the legislature, entitled "An act authorizing municipalities governed by commissioners to pave and improve streets and avenues and provide payment thereof," approved March 11th, 1892 (*Gen. Stat.,* p. 2156), is in contravention of article 4, section 7, paragraphs 9 and 11 of the constitution of this state and void, and any assessments for special benefits imposed thereunder will be set aside.

On *certiorari.*

Argued at February Term, 1896, before Justices LIPPIN-COTT and LUDLOW.

For the prosecutors, *William H. Vredenburgh* and *Craig A. Marsh.*

For the defendants, *William W. Niles* and *C. Ewing Patterson.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This *certiorari* is brought to review the proceedings of the board of commissioners of the Long Branch Police, Sanitary and Improvement Commission, styled "The Long Branch Commissioners," providing for an assessment for special benefits, and the assessment for such benefits made and levied against the lands of the prosecutors for paving and improving of North Broadway, Third avenue and East Third avenue, in Long Branch.

The prosecutors of this writ are the owners of property fronting upon Broadway and North Broadway, two of the streets which have been paved, for the expense of which assessments for special benefits have been imposed upon the lands of the prosecutors.

By a special act of the legislature, entitled "An act to establish 'The Long Branch Police, Sanitary and Improvement Commission,'" approved April 11th, 1867 (*Pamph. L., p.* 976), a certain territory in the county of Monmouth was created into a local municipal subdivision, to be governed, to a certain extent, by commissioners appointed in accordance with the provisions of the act.   The act constituted a police and sanitary board, styled as " The Long Branch Commissioners."

Many powers of local government were conferred upon the commissioners by the general terms of the statute, such as the power to pass ordinances " to prevent vice and immorality, to preserve the public peace and order, to prevent and quell riots, disturbances and disorderly assemblages, and to lay out,

regulate and improve roads and water the same, and to remove encroachments thereon ; to lay out, regulate and improve parks and public grounds, with the consent of the landowners, * * · * and to improve the sanitary condition of the place." Under this act no power was conferred upon the commissioners to make any assessments against lands specially benefited by the laying out or the improvement of streets. Some amendments have from time to time been enacted, conferring some additional powers upon the commissioners.

The assessments in question, under review, were made under an act entitled "An act authorizing municipalities governed by commissioners to pave and improve streets and avenues and provide for the payment thereof," approved March 11th, 1892. *Pamph. L., p.* 146 ; *Gen. Stat., p.* 2156.

The act provided a special manner by which these assessments for peculiar special benefits shall be made in municipalities governed by commissions. The terms of the act are limited in their operation to municipalities "governed by commissioners."

The general scheme of the act is that a majority of real estate owners along the line of the proposed improvement alone have power to initiate proceedings ; that a municipal election is required to be held on their demand, to determine whether the improvement shall be made, and providing the manner of payment therefor ; that none but owners of property fronting or bordering on the improved streets may be assessed for special benefits ; that the aggregate amount of assessments for special benefits imposed on any tract of land fronting or bordering on the improved streets or on any owner thereof, shall not exceed twenty-five per cent. of the whole cost of such improvement in front of such tract ; that at least fifty per cent. of the total cost of the improvement is required to be borne by the municipality—that is to say, paid for out of the general treasury, from the moneys received by or for the use of the municipalities from liquor license fees.

It must be apparent at a glance that the act under which these proceedings were taken, and the assessment imposed

against the lands of the prosecutors, are condemned by article 4, section 7, paragraphs 9 and 11, of the constitution of this state.

Under this act the selected municipalities are those "by whatever name the same may be known, and however created, governed by commissioners," and thus the classification of the municipalities to which this act relates is based alone upon the name or title of the governing body. This is the sole source of the classification, and the only quality upon which it is sought to be created.

The act is one which attempts to grant certain corporate powers and to regulate the internal affairs of the municipalities, and there is no substantial or natural reason that can be proved why its powers and privileges should be conferred alone upon municipalities governed by commissioners, in exclusion of all other municipalities of like character governed otherwise.

Upon all the authorities, this act must be held to be unconstitutional. *Randolph* v. *Wood*, 20 *Vroom* 85; *Stahl* v. *Trenton*, 25 *Id.* 445; *Tetrault* v. *Orange*, 26 *Id.* 99; *Loucks* v. *Bradshaw*, 27 *Id.* 2; *Goldberg* v. *Dorland*, *Id.* 364; *Johnson* v. *Hoover*, 29 *Id.* 334.

It is not necessary to consider the other reasons urged by the prosecutors. Both the proceedings and the assessments must be set aside, with costs.